# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GILBERT P. HYATT, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 18-234 (RCL) |
| v. | ) |
| U.S. PATENT AND TRADEMARK OFFICE, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the Court is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, challenging the withholding of a single email message by the United States Patent and Trademark Office ("PTO"). The email at-issue was sent by one PTO patent examiner to another using PTO's email system, in reply to the receiving examiner's initial email concerning a patent applicant, plaintiff Gilbert P. Hyatt, whose patent applications the two examiners were (and perhaps still are) responsible for examining. The PTO nevertheless denied Mr. Hyatt's request for production of this email message on the ground that it is not an agency record, or, alternatively, that it is exempt from disclosure under FOIA's Exemption 6.

Mr. Hyatt is a prolific inventor who has received more than seventy issued patents and has pending at various stages of prosecution and appeal nearly 400 patent applications before the PTO, the federal agency responsible for examining patent applications and for granting U.S. patents. 35 U.S.C. § 1, *et seq*. Beginning no later than 2005, Mr. Hyatt has been litigating several of his patent applications before this Court pursuant to 35 U.S.C. §145. *See, e.g.*, 05-cv-

1

2310; 09-cv-1864; 09-cv-1869; 09-cv-1872.[1]  Certain limited discovery related to a portion of that litigation gave rise to his becoming aware of the document that is now the subject of his FOIA request.

Having considered Mr. Hyatt's Motion for Summary Judgment, ECF no. 3, the PTO's opposition thereto and Cross-Motion for Summary Judgment, ECF nos. 15 and 16, the related reply briefs, the disputed document itself, *see* ECF no. 22,[2] and the entire record in this case, the Court **GRANTS** Mr. Hyatt's Motion for Summary Judgment, ECF no. 3, and **DENIES** the PTO's Cross-Motion for Summary Judgment, ECF no. 15.

## Background

After the conclusion of summary judgment proceedings in the above-cited §145 actions, which resulted in the necessity of holding trials on the merits in three of those cases,[3] the PTO asserted the affirmative defense of prosecution laches, arguing that unreasonable and unexplained delay by Mr. Hyatt cut off his entitlement to issuance of any patents still under consideration.  In response, Mr. Hyatt sought and obtained discovery regarding the PTO's handling of his applications, relating to documents that might tend to show that the PTO handled his applications in bad faith so as to amount to "unclean hands" that would preclude the PTO from asserting prosecution laches.  In response to Mr. Hyatt's discovery requests, the PTO produced, *inter alia*, a March 10, 2016 email by Walter Briney (the "Briney email"), a patent examiner assigned to work on Mr. Hyatt's applications.  The Briney email was addressed to all members of the PTO's Art Unit 2615, a part of the PTO sometimes referred to as the "Hyatt

---

[1] Mr. Hyatt filed the instant case as related to those matters.  The government has not challenged the relatedness of this action to those, and the Court finds that they are, indeed, related.
[2] On August 2, 2018, the government complied with the Court's Order at ECF no. 22, but failed to contemporaneously notice its compliance on the public docket.
[3] *See* ___ F.Supp.3d ___, 2018 WL 3656071 (D.D.C. 2018).

Unit" because it was established in large part for the very purpose of examining Mr. Hyatt's unique and uniquely situated patent applications. In the email, Mr. Briney shared with his colleagues a link to a 1993 newspaper article concerning legal proceedings relating to Mr. Hyatt's years-earlier divorce. In the body of the email, Mr. Briney opined that the article "provides a unique glimpse into Hyatt's mind . . ." In a sworn deposition on September 28, 2017, Mr. Briney stated one of recipients of his email, examiner Hien Dieu Thi (Cindy) Khuu, responded to his message.

Despite producing the Briney email in response to Mr. Hyatt's document requests in the patent litigation before this Court, the PTO did not produce Ms. Khuu's reply (the "Khuu email"). Nor did the PTO identify the Khuu email as potentially responsive to Mr. Hyatt's discovery requests; the first Mr. Hyatt learned of its existence was during Mr. Briney's deposition. The PTO subsequently declined to produce the Khuu email to Mr. Hyatt, and on October 4, 2017, Mr. Hyatt moved in the four §145 actions to compel its production. ECF no. 182 (05-2310); ECF no. 178 (09-1864); ECF no. 182 (09-1869); ECF no. 180 (09-1872). The PTO opposed Mr. Hyatt's motion on the ground that the Khuu email was outside of the scope of discovery authorized by this Court. In its opposition, the PTO characterized the Khuu Email as, "An e-mail between two USPTO examiners reflecting their mental impressions in the context of Mr. Hyatt's divorce litigation." ECF no. 185 (05-2310); ECF no. 181 (09-1864); ECF no. 185 (09-1869); ECF no. 183 (09-1872). Mr. Hyatt's Motion to Compel in the §145 cases was subsequently mooted on October 16, 2017 by this Court's granting Mr. Hyatt's Federal Rule of

Civil Procedure 52(c) motion at the close of the PTO's case-in-chief in the trial concerning PTO's prosecution laches defense.[4]

On November 6, 2017, Mr. Hyatt filed a FOIA request for the Khuu Email; the PTO acknowledged receipt of that request on November 9, 2017. On December 7, 2017, the PTO denied the FOIA request, stating that it had "reviewed the requested record," but the Khuu Email "is not an agency record and so there is no agency record responsive to your request." It contained no additional reasoning or explanation for denying the FOIA request.

Mr. Hyatt appealed the denial on December 13, 2017. On December 26, 2017, the PTO wrote to acknowledge its receipt of Mr. Hyatt's appeal, and subsequently denied that appeal on January 19, 2018. The PTO's appeal denial took note that the Khuu Email "was created by an Agency employee and is located within the Agency's email system" and that its sender "may not have had an expectation of privacy" in emails sent through the PTO's email system. But the PTO nevertheless concluded anew that the Khuu Email was not an agency record subject to FOIA because "it was not used . . . in conducting official Agency business." The Appeal denial states that it is the PTO's final decision and is subject to judicial review.

Mr. Hyatt brought his request to this Court on February 1, 2018, and on the same day moved for summary judgement as to PTO's obligation to produce the requested email. ECF no. 3. At the same time, Mr. Hyatt also filed a Motion to Compel the Khuu email for *ex parte, in camera* review, arguing, "*in camera* review promises to substantially advance judicial and party economy." ECF no. 4. PTO opposed Hyatt's motion and filed its own cross-motion for summary judgment, as well as its opposition to the Motion to Compel, on April 9, 2018. ECF

---

[4] The Court's Findings and Conclusions with respect to that ruling were issued on July 31, 2018. ___ F.Supp.3d ___, 2018 WL 3654777 (D.D.C. 2018). *See* ECF no. 233 (05-2310); ECF no. 230 (09-1864); ECF no. 205 (09-1869); ECF no. 223 (09-1872).

4

nos. 15, 16, 17. Each respective motion ripened after the appropriate subsequent opposition and reply briefs were filed.

On July 23, 2018, this Court granted Mr. Hyatt's Motion to Compel, ECF no. 22, finding that not to do so would result in a waste of judicial and party resources. *Id.* at 3. Later that day, Mr. Hyatt filed a document styled as a "notice of supplemental authority," ECF no. 21,[5] in which he made the Court aware of the status of another FOIA request he had pending before the PTO.

On August 2, 2018, the government complied with the Court's Order on Hyatt's Motion to Compel, delivering to the Court a hard-copy of the single page in-dispute here. The Court has reviewed the twenty-eight word email and, for the reasons articulated below, finds it to be releasable pursuant to Mr. Hyatt's FOIA request.

**Legal Standard**

Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). It is "appropriate only in circumstances where 'the evidence is such that a reasonable jury could not return a verdict for the nonmoving party.'" *Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must view all evidence "in the light most favorable to the nonmoving party" and, if a genuine dispute exists, "parties should be given the opportunity to present direct evidence and cross-examine the evidence of their opponents in an adversarial setting." *Id.*

---

[5] Although the Court had signed the Order docketed as ECF no. 22 before the plaintiff's filing, the Order was not uploaded to ECF until the following day.

5

As applied in a FOIA case, an agency defendant may be entitled to summary judgment if it demonstrates that 1) no material facts are in dispute, 2) it has conducted an adequate search for responsive records, and 3) each responsive record that it has located has either been produced to the plaintiff or is exempt from disclosure. *Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 18 (D.D.C. 2012) (*citing Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C. Cir. 1980)). Agencies can meet their burden on FOIA matters through a "reasonably detailed affidavit," *see Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), which is to be "accorded a presumption of good faith." *See Mobley v. C.I.A.*, 806 F.3d 568, 580–81 (D.C. Cir. 2015), quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Agency Records

Courts have long recognized that not all records that happen to reside in government coffers are "agency records" for FOIA purposes. The Supreme Court in *U.S. Department of Justice v. Tax Analysts* established two factors to determine whether a document requested under FOIA is an "agency record." 492 U.S. 136, 144–45 (1989). First, the agency must either "create or obtain" the document. *Id.* at 144–45. Second, the agency must be "in control of the requested materials at the time the FOIA request is made." *Id.* at 145. Whether an agency has "control" over a record depends upon: "(1) the intent of the document's creator to retain or relinquish control over the record[ ]; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record systems or files." *Burka v. HHS*, 87 F.3d 508, 515 (D.C. Cir. 1996) (quoting *Tax Analysts v. DOJ*, 845 F.2d 1060, 1069 (D.C. Cir. 1988)).

6

As relevant here, "agency records" are distinguishable from "personal records" that might be physically maintained by agency employees in their workspace, but that are nevertheless not subject to release under FOIA. Determining that an item is a personal record involves "the totality of the circumstances surrounding the creation, maintenance, and use" of the record. *Bureau of Nat'l Affairs, Inc. v. DOJ*, 742 F.2d 1484, 1492 (D.C. Cir. 1984).

Exemption 6

Exemption 6 protects from FOIA disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C § 552(b)(6). The exemption thus has two prongs, and requires an agency to prove both the nature of the files and that the files' disclosure "would constitute a clearly unwarranted invasion of personal privacy." *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599–603 (1982). The first criterion does not require that the information be contained in a specifically designated "personnel" file, *id.* at 601, and is met if the information "appl[ies] to a particular individual" and is "personal" in nature. *New York Times Co. v. NASA (N.Y. Times I)*, 852 F.2d 602, 606 (D.C. Cir. 1988). The second step of an Exemption 6 analysis is to strike a "balance between the protection of an individual's right to privacy and the preservation of the public's right to government information." *Washington Post Co.*, 456 U.S. at 599. The "public interest" in the analysis is limited to the "core purpose" for which Congress enacted the FOIA, *i.e.*, to "shed . . . light on an agency's performance of its statutory duties." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).

"Under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act," *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002), and many years of consistent precedent makes clear that information about federal employees

generally does not qualify for protection. *See, e.g., Arieff v. Dep't of the Navy*, 712 F.2d 1462, 1467–68 (D.C. Cir. 1983); *Aguirre v. SEC*, 551 F.Supp.2d 33, 54 (D.D.C. 2008) ("Correspondence does not become personal solely because it identifies government employees."). Although personal information about a particular individual can trigger Exemption 6, that information normally falls into specific categories that typically includes "place of birth, date of birth, date of marriage, employment history, and comparable data." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989). In examining an Exemption 6 withholding, the court must balance the privacy interest at stake against the public's interest in disclosure. *Fund for Constitutional Gov't v. National Archives and Records Serv.*, 656 F.2d 856, 862 (D.C. Cir. 1981).

**Discussion**

Hundreds of pages of court filings have been spent litigating the nature of a single email. As happens sometimes in FOIA litigation, trees have been felled over the protection of a single page. There is a silver-lining in this particular matter, however: the Court can dispose of it relatively quickly.

Ultimately, the PTO's arguments that the Khuu email 1) is not an agency record, and 2) even if it is, may properly be withheld under Exemption 6, are both based upon the underlying premise that the substance of Ms. Khuu's email is purely personal. Where the agency's arguments on the two grounds diverge is on matters of function and substance – if the email was not actually used in the normal course of agency business, PTO argues, it cannot be considered an agency record; as to Exemption 6, PTO argues that Ms. Khuu included in her email information so personally sensitive that its disclosure would constitute a clearly unwarranted invasion of her personal privacy. Both arguments fail; the second one, miserably so.

8

Agency Records

To qualify as an agency record, the Khuu email must have been either created or obtained by the PTO, and the PTO must have had control of it at the time Mr. Hyatt made his FOIA request. *See Tax Analysts*, 492 U.S. at 145. There is no doubt that the Khuu email was "obtained by" the PTO, *see also* ECF no. 15-1 at *4; the issue here is whether the agency has "control" of the email for FOIA purposes.

Like so much of Mr. Hyatt's litigation concerning other matters, this case rests on unique facts, in which the general approach to what constitutes control of a record does not squarely fit the circumstances. This is because the agency's structure with respect to Mr. Hyatt is itself unique. PTO's Art Unit 2615 is staffed principally to examine the patentability of inventions claimed by a single applicant: Mr. Hyatt. Even considering the *Burka* factors at face value, however, and especially considering that the only alternative finding here would be to hold that the Khuu email is a "personal record," *see also* ECF 15-1 at *3, the Court finds that the totality of the circumstances here weigh in favor of the Khuu email being an agency record for FOIA purposes. The PTO attempts to frame the email as containing a personal opinion "in the context of an email exchange about divorce proceedings." But a close reading of its filings reveals that it was unable even to assert that the email in question was *about* divorce. Indeed, a personal record in that context might have included Ms. Khuu making a general comment about divorce, lamenting about a personal experience with divorce, sharing her knowledge, experiences, or beliefs about matrimony, divorce, religion, or the law, or expressing something similar. This email does not. Instead, it comments specifically on an element of Mr. Hyatt's character that reasonably would be at issue in any negotiations between Mr. Hyatt and agency employees at any level, from examiners to policymakers.

The Khuu email is part of a brief email exchange between two agency employees, on an agency system, inspired by an article concerning the particular individual whose applications these examiners were dedicated, full-time, to examining. The PTO stakes its case heavily on the notion that an email between agency employees on an agency server is not necessarily an agency record, and, more importantly, the agency did not "rely upon" Khuu's email in any formally documented way that would unquestionably make it an agency record. PTO argues, "Neither Ms. Khuu nor Mr. Briney used or intended to use the document in the examination of patents." *See, e.g.*, ECF no. 15-4 at *5. This very literal but vacuous recitation of a judicially-created factor belies the point, purpose, and implication of the underlying FOIA request. In this vein, the PTO's heavy reliance on *Judicial Watch v. FHFA*, 646 F.3d 924 (D.C. Cir. 2011), is misplaced. The decisive factor in that case was that, "The public cannot learn anything about agency decisionmaking from a document the agency neither created nor consulted, and requiring disclosure under these circumstances would do nothing to further FOIA's purpose of 'open[ing] agency action to the light of public scrutiny.'" *Id.* at 927-28 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). Here, however, the Court has before it a FOIA request concerning what the requested document may reflect about how examination of a large group of patents has proceeded, and Khuu clearly expresses an opinion about a character at the center of her examination portfolio, to a colleague who has that same portfolio.

Here, too, is where PTO's reliance on *Bureau of National Affairs, Inc. v. U.S. Dep't of Justice* (*BNA*), 742 F.2d 1484 (D.C. Cir. 1984), for the proposition that documents merely "relat[ing] to" an employee's duties, *id.* at 1493, fails. First, the instant facts present a situation far different from the "personal diary" hypothetical *BNA* uses in the passages PTO cites. Second, the Briney/Khuu exchange arguably does reflect substance related to, and therefore sheds light

10

on the examination of Mr. Hyatt's applications. The document at-issue in this matter relates to these examiners' interaction with a patent applicant. Indeed, the PTO's description that the email "reflected a . . . communication between those two individuals," ECF 15-1 at 6, would have been far more accurate if it had added, "about a matter within the scope of their duties, to wit, Mr. Hyatt." Under the circumstances of this case, in which the government is seeking to shield from disclosure Ms. Khuu's "personal thoughts and opinions," *id.*, concerning a matter under her charge, the government's argument would seem to reach a document containing employee dissent to an agency policy, or even employees' or officials' unadopted policy or operational recommendations, as they are unlikely to be "used in" official agency business under the PTO's definition. Although such deliberative products might nevertheless be exempted from FOIA disclosure under, perhaps, Exemption 5, it is entirely likely they would meet the threshold test of being agency records.

That the emails were between patent examiners whose jobs are strictly to review patent applications for compliance with statutory mandates is likewise unavailing. *See* ECF no. 15-1 at 6 (stating the PTO's argument that "The examination of patents is governed by law and regulation and specifically does not permit patent examiners to consider their personal feelings or opinions in conducting their duties. The use of the requested document solely for personal reasons should be dispositive here."[6]). The PTO appears to wish the Court to find that opinion-laden documents are not agency records where the law does not allow for government employees to consider their personal opinions in the course of their official duties, or where statute or

---

[6] The second sentence in this passage is ambiguous. The Court assumes, in the context of the present section, that the PTO means to say, "The [email's creator's and receiver's] use of [the email] solely for [their own] personal reasons should be dispositive here." This differs significantly from the arguments PTO makes with respect to Exemption 6, where the exact same sentence could be read to mean, "The [plaintiff's likely] use of the requested document solely for [his own] personal reasons should be dispositive here." As discussed below, the latter construction goes to balancing the public interest with the purpose of the FOIA, which has no bearing on whether the requested email is an agency record to which the exemption might apply.

11

regulation limits the extent to which an employee's personal opinion is permitted to enter into consideration in the course of those duties.[7]

Contrary to the PTO's assertion, the fact that the creation and reading of the email thread may have been outside the scope of the sending and receiving examiners' employment with the agency is not dispositive as to whether the email is an agency record. Such a rule would, for example, hinder a FOIA requester's ability to uncover fraud, waste, or abuse in government agencies. *Cf. McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d 1182, 1194 (D.C. Cir. 2004) (Garland, J., dissenting). Indeed, the universally recognized purpose of FOIA is to make government more transparent, *see, e.g., Judicial Watch, Inc. v. United States Dep't of Homeland Sec.*, 895 F.3d 770, 783 (D.C. Cir. 2018); it is in light of that purpose that the courts have formulated their rulings and tests. And the government would be hard-pressed to find any other instance where an agency has created a defined, formalized, structured reporting unit dedicated chiefly to adjudicating the administrative (and Constitutional) rights of a single citizen/applicant.[8] Under these circumstances, it is not unreasonable to presume that correspondence between two examiners concerning the individual whose applications they each are charged with examining, full-time, would never influence how they treat his applications notwithstanding statutory dictates. It is true that neither Mr. Biney nor Ms. Khuu was charged with performing any sort of all-source analysis upon which to make qualitative policy or operational judgments. However, the entire scope of their duties concerned reviewing Mr. Hyatt's life's work, which is extensive enough that the PTO has taken affirmative steps to organize itself in such a way as to dedicate a group of examiners to its review. This unique

---

[7] Nothing in the agency's arguments overtly suggests its reasoning would not also apply to lengthy exchanges between multiple agency employees on agency networks, but the Court has faith the government understands the *Burka* factors to appear to weigh even more heavily against that hypothetical situation.

[8] Law enforcement and national security task forces have no bearing on the analysis here.

factor is critical to the Court's determination that, under the totality of the circumstances here, the Khuu email qualifies as an agency record for FOIA purposes.

Finally, that the email was "never placed in any official Agency files," ECF no. 15-1 at 5, is of little relevance here. On its face, the government's argument seems to suggest that, for an email to be releasable under FOIA, an employee must go out of his way to save it in a place other than his email inbox. The Court trusts that the government is not actually making that argument, as doing so would be rather preposterous in light of its recent release of more than 35,000 emails subject to FOIA litigation, even though many of them were stored on a private server. *See* https://foia.state.gov/Search/Results.aspx?collection=Clinton_Email. Nevertheless, the PTO offers the Court neither a limiting principle to its argument, nor a reasonable test for the Court to apply in this case as to the scope and bounds of what should be considered "official Agency files," either generally or with respect to the examination of Mr. Hyatt's patent applications. Indeed, that it merely "makes sense" that there would be personal correspondence in an employee's email box, ECF no. 15-1 at 5, does little here, where the PTO's pointing to its "policy permitting limited personal use of government resources, including email," *id.*, effectively operates as an admission that the majority of the emails in an employee's inbox are (or at least ought to be) agency records.

<u>Exemption 6</u>

To withhold the Khuu email under Exemption 6, PTO must show that 1) the information contained in the email "appl[ies] to a particular individual" and is "personal" in nature, *N.Y. Times I*, 852 F.2d at 606, and 2) that the files' disclosure "would constitute a clearly unwarranted invasion of personal privacy," as weighed against "the public's right to government information." *Washington Post*, 456 U.S. at 599–603.

The threshold for meeting the first prong is "minimal," and this Circuit has unambiguously held that, when there is non-lexical information in a government record that can be traced to an individual (such as a single author), the government is entitled an opportunity to satisfy the second prong. *See N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.* (*N.Y. Times II*), 920 F.2d 1002, 1006-1009 (D.C. Cir. 1990) (*en banc*). Although a hypothetically different FOIA request for any replies to the Briney email might have allowed PTO an opportunity to redact Ms. Khuu's name from the email, that is not this case. Because we know the identity of the author of the specific document at-issue, the law of this Circuit requires this Court to find that the email is a record that applies "to a particular individual."

But the PTO's argument utterly fails the second prong of the test, especially given the strong presumption in favor of disclosure under Exemption 6. *See also Nat'l Ass'n of Home Builders*, 309 F.3d at 32. To be sure, the public interest to be weighed is whether releasing the document would "shed . . . light on an agency's performance of its statutory duties." *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773. Under the present facts, and absent anything other than the unsupported and conclusory arguments PTO makes as to Ms. Khuu's alleged privacy interest, this Court does not find there to be a "clearly unwarranted invasion of personal privacy" here.

First, as to the privacy interest: for the proposition that the author of a document has "a personal privacy interest in the thoughts and beliefs contained" in his communications, the PTO points to a single unreported case from the District of Hawaii only once cited to by another court of this Circuit, and then only on easily distinguishable facts. The cited case, *Yonemoto v. Dep't of Veterans Affairs*, Civ. No. 06378, 2007 WL 1310165 (D.Haw. May 2, 2007), arose from an agency employee's FOIA request for emails between co-workers that referred to the FOIA

14

plaintiff. The court in *Yonemoto* found the emails' authors to have protectable privacy interests in their personal feelings about Yonemoto, who presumably was a colleague of theirs, over whom the emails' authors had no supervisory authority.[9] The matter in which a different court of this circuit cited to *Yonemoto* did so as an example of a court rejecting a fishing expedition by a FOIA plaintiff. *See Krieger v. U.S. Dep't of Justice*, 529 F.Supp.2d 29, 42 (2008) (CKK). In any event, even if this Court were to agree with the analysis in *Yonemoto*, the present case is easily distinguishable.

Although the Court is confident that Ms. Khuu, like the PTO, would rather her email not be released, she does not have a "strong privacy interest" tied to its contents. ECF no. 15-1 at 12. As mentioned above, Ms. Khuu does not give an opinion about divorce or other matter personal to her in the email; rather, she relates an opinion about her charge. Further, it is worth repeating that Mr. Hyatt is not merely one of many patent applicants whose purported inventions Ms. Khuu is reviewing – he is the full-time subject of her job.

The PTO also points to no grounds to substantiate its assertion that "Ms. Khuu [will] be subjected to annoyance or harassment, by the Plaintiff or others," and is in fact misleading when it further surmises that any such harassment would be "based on her personal opinions about a sensitive topic such as divorce," which her email is not, in fact, about. *See* ECF no. 15-1 at 11. Further, that Ms. Khuu might be subjected to a deposition in future litigation is simply not the sort of "annoyance or harassment" with which the D.C. Circuit was concerned when discussing the topic in *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 488 (D.C. Cir. 1980), which the PTO cites in support. The Court in *Lesar* was concerned with protecting the identities of law

---

[9] The court did not specifically address the relationship between the employees at-issue.

15

enforcement agents involved in investigations related to Dr. Martin Luther King, Jr., a scenario readily distinguishable from this one.

Second, there is a cognizable public interest associated with the release of this email. Although the PTO argues the email "does not contribute in any significant way to the public understanding of the operations or activities of the USPTO," ECF no. 15-1 at 11, its lens is simply far too broad. The document does contribute to the public's understanding about a specific unit within the PTO. Further, it is a document that could be argued to shed light on an entire Art Unit's approach to its work. Despite the PTO's reliance on the fact that "The entire examination process is governed by law and regulation," and that "Examiners are not permitted to consider their personal feelings or opinions when determining whether to allow or reject a patent application," ECF no. 15-4 at 3-4, 5, that Mr. Briney felt the need to ensure his colleagues would "treat [Mr. Hyatt] with respect" suggests that the examiners in Art Unit 2615 may not have been treating the applicant (who has paid millions of dollars in fees) with respect, to such an extent that there is a plausible basis for Mr. Hyatt to suspect their personal opinions may have interfered with their work. That the Khuu email contains a "personal opinion," *id.* at 6, does not means it satisfies the standard for Exemption 6. The PTO's characterization that the document at-issue was merely part of "an email exchange about divorce proceedings," *id.*, is so general and incomplete as to be downright misleading. The Khuu email, like the Briney email to which it responded, relates to a subject who is not only within the scope of those examiners' official duties, but who represents the singularity at the center of their professional universe.

The PTO also argues that Mr. Hyatt's FOIA request is merely a function of his own private interests as a litigant against the government, and thus does not fit the purpose for which FOIA was enacted. First, "whether an invasion of privacy is warranted cannot turn on the

purposes for which the request was made." *Reporters Comm.*, 489 U.S. at 771. Further, although Mr. Hyatt's FOIA request is undoubtedly not wholly separate from his litigation interests, the PTO's argument ignores that how its patent examiners approach their jobs is a question that falls squarely within the public's right to know how their government is functioning. Patent examiners fulfill a critical role in our constitutional democracy, helping to ensure the progress of science and useful arts. *See* U.S. CONST. art. I, §8, cl. 8. They must fulfill that duty without regard to the identity of whose patent application(s) they are examining. The email to which Ms. Khuu replied can be read in such a way as to call into question that necessary objectivity. Both the Briney and Khuu emails were sent by examiners assigned specifically to review Mr. Hyatt's applications, related to Mr. Hyatt as an individual and did not concern the substance or merits of those applications, and were unconnected to any other proceedings that might make them subject to privilege. Although gossip amongst colleagues is natural and even normal, such exchanges between public servants are not *per se* shielded from disclosure merely because their employing agency considers them to be insignificant.

**Conclusion**

For the reasons detailed above, the Court will **GRANT** Mr. Hyatt's Motion for Summary Judgment, ECF no. 3, and will **DENY** the PTO's Cross-Motion for Summary Judgment, ECF no. 15. A separate order will issue this date.

Date: 9/28/18

Royce C. Lamberth
United States District Judge